UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

EASTERN DIVISION


UNITED STATES OF AMERICA    )
                                  )
                                  )
        V.                  )    4:17-CR-013-D
                                  )
                                  )
RICHARD LENZY,           )
                                  )
          DEFENDANT.    )
_____  )


RULE 11 HEARING
AUGUST 15, 2017
BEFORE THE HONORABLE JAMES C. DEVER III
CHIEF UNITED STATES DISTRICT JUDGE


<u>APPEARANCES:</u>

<u>For the United States</u>:

Mr. William Glenn Perry
United States Attorney's Office
215 South Evans Street, Suite 206
Greenville, NC 27858


<u>For the Defendant:</u>

Ms. Deirdre A. Murray
Federal Public Defender's Office
150 Fayetteville Street, Suite 450
Raleigh, NC 27601


OFFICIAL COURT REPORTER:  Michelle Maar, RDR, RMR, FCRR
Stenotype with computer-aided transcription

<u>TUESDAY, AUGUST 15, 2017, 9:04 A.M.</u>

THE COURT:  At this time, the Court will call the calendar to be sure that all defendants and their lawyers are present.

When the Court calls the defendant's name, the defendant's lawyer should answer.

If the defendant does not have a lawyer or if the defendant's lawyer is not present, the defendant should answer.

After the Court calls the calendar, all defendants and their lawyers will remain in the courtroom so the Court may provide a general advice of all the rights that each defendant has under the Constitution and laws of the United States.

After the Court provides this general advice of those rights, the Court will take up each individual case for purposes of the entry of a plea of either guilty or not guilty.

As part of that process, each defendant will be placed under oath and questioned individually.

A defendant may consult with his or her lawyer at any time before answering any of the questions.

At this time, the Court will call the calendar.

* * * * *

THE COURT:  Richard Lenzy.

1          MS. MURRAY:  Good morning, Your Honor.  Deirdre

2   Murray on behalf of Mr. Lenzy.  He's present in the

3   courtroom.  And we're ready to proceed with a guilty plea

4   pursuant to a plea agreement.

5          THE COURT:  Good morning, Ms. Murray.

6                          *  *  *  *  *

7          THE COURT:  Each defendant should pay close

8   attention to what the Court is about to say.  It will be an

9   important part of each defendant's case.  And each

10  defendant will be asked if he or she heard and understood

11  the Court's comments.

12         I now advise each defendant as follows:

13         If you are accused of a felony, you have the

14  constitutional right to be charged by an indictment

15  returned by a federal grand jury.  Unless you waive

16  indictment, you may not be charged in Federal Court with a

17  felony.

18         To be indicted by a grand jury, the grand jury must

19  find that there is probable cause to believe that you

20  committed the charged crime.

21         A grand jury consists of 16 to 23 persons.  And at

22  least 12 grand jurors must find that there is probable cause

23  to believe that you committed the charged crime before you

24  may be indicted.

25         However, a person may waive the right to grand jury

1  indictment and consent to being charged by a criminal

2  information filed by the United States Attorney.

3      If you do not waive indictment, the government may

4  present the case to the grand jury and ask the grand jury to

5  indict you.  The grand jury may or may not do so.  If you

6  waive grand jury indictment, the case will proceed against

7  you based on the U.S. Attorney's information just as though

8  you had been indicted.

9      In addition to the right to be charged by an indictment

10  returned by a federal grand jury, the Constitution and laws

11  of the United States give you the right to plead not guilty

12  with respect to all charges that have been brought against

13  you and to have a jury trial with respect to all charges

14  brought against you.

15      In that regard, you should consider the following:

16      First, at a jury trial, you would be presumed innocent.

17  The government would be required to prove your guilt through

18  competent evidence and beyond a reasonable doubt.  You would

19  not have to prove that you were innocent.

20      Second, at a jury trial, witnesses for the government

21  would have to come to court and testify in your presence.

22  Your lawyer could cross-examine those witnesses, object to

23  evidence offered by the government, and offer evidence on

24  your behalf.

25      Third, at a jury trial, you would have the right to use

1   the subpoena power of the Court to make witnesses come to

2   court on your behalf, whether they wanted to or not.

3       Fourth, at a jury trial, you would have the right to

4   testify if you chose to do so.  You also would have the

5   right not to testify.  And if you chose not to testify, the

6   Court would expressly tell the jury that no inference or

7   suggestion of guilt could be drawn from your failure to

8   testify.

9       Fifth, you have the right to be represented by counsel

10  at trial and at every other stage of the proceeding in this

11  court.

12      If you are unable to afford counsel, you have the right

13  to have the Court appoint counsel to represent you at trial

14  and at every other stage of the proceeding in this court.

15      Whether you plead guilty or not guilty will not affect

16  whether you have a lawyer in this court.  If you want to

17  have a lawyer represent you in connection with your case in

18  this court, you will have a lawyer.

19      If you plead guilty, you will waive your right to a

20  jury trial and these other trial rights that I've talked

21  about.

22      Instead of a jury trial, you will be judged guilty and

23  you will be sentenced on the basis of your guilty plea after

24  the Court considers all relevant factors listed under 18

25  U.S.C. Section 3553(a), the now-advisory sentencing

guidelines, any departure or variance motion, all arguments of counsel, any statement you make, and any victim allocution.

If you have reached a plea agreement with the government, the Court is obligated to examine carefully any such agreement to be sure that the agreement conforms with the objectives of sentencing, including imposing a sentence within the parameters of your statute of conviction that is appropriate to the seriousness of your actual offense behavior and your past criminal conduct, if any.

The Court will evaluate such behavior and conduct only after it receives a detailed, written presentence report from the Probation Office.

If you have reached a plea agreement with the government, you should realize that the Court is not a party to the plea agreement.  Such agreements are negotiated solely between you, your lawyer, and the lawyer for the government.

You are advised that any stipulations contained in your plea agreement are not binding on the Court.  Rather, the Court will make an independent determination as to your sentence after applying all relevant sentencing factors to your case, considering all arguments of counsel, any statement you make, the advisory guideline range, and any departure or variance motion.

A plea of guilty has the following additional consequences:

First, you will have to waive your right not to incriminate yourself because the Court will ask you questions about what you did and you will have to admit your guilt.

Second, the Court may impose the same punishment as if you had pleaded not guilty and had been convicted by a jury.

Third, if you are on probation or parole in another case in this or another court, by pleading guilty here, your probation or parole in that other case might be revoked. And you might have to serve time in that other case in addition to any sentence of imprisonment or other punishment that you receive here.

Fourth, in addition to any sentence imposed, your plea of guilty to a felony may deprive you of certain valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to ever possess any kind of firearm.

Moreover, if you are not a citizen of the United States and you are convicted of a felony, you may be removed from the United States, denied citizenship, and denied future admission to the United States.

Furthermore, if you are ordered imprisoned due to your felony conviction and you are not a citizen of the United

1    States, you will serve your sentence of imprisonment in the

2    United States before you are deported or removed from the

3    United States.

4         Additionally, unless otherwise advised, each defendant

5    will be assessed per count a sum of not less than $100.  And

6    the fine imposed will bear interest.

7         Fifth, in some cases, obligations in addition to a

8    sentence of imprisonment or a fine may be imposed.

9         For example, you may be ordered to pay restitution to

10   the victims of your crime or you may be ordered to forfeit

11   certain property if there is a forfeiture notice in your

12   indictment or information.

13        Additionally, in most cases, each defendant will

14   receive not only a term of imprisonment but also a term of

15   supervised release.  The term of supervised release follows

16   the term of imprisonment.

17        Such release is conditioned on your non-commission of

18   another federal, state, or local crime and such other

19   conditions as the Court deems appropriate.  If you violate

20   the conditions of supervised release, you are subject to

21   further imprisonment.

22        Cases in which guilty pleas are tendered and accepted

23   today are set for sentencing at this Court's November 13,

24   2017 term of court here in Raleigh.

25        Regardless of the advisory guideline range ultimately

found to be appropriate to your case, you may not withdraw a
guilty plea that is tendered and accepted today.

Between now and the sentencing date just announced, the
Probation Office will prepare a detailed, written
presentence report.

It is important that the presentence report be complete
and accurate.  The presentence report will be an important
tool to aid the Court in determining your sentence.

You and your lawyer may give information for that
report.  You and your lawyer will be furnished a copy of
that report once Probation completes it and will have an
opportunity to timely comment on it.  Once you receive it,
examine it carefully.

Within 15 days after receiving the report, you and your
lawyer must communicate in writing to the Probation Office
any objections that you have to any information contained in
or omitted from that presentence report.  The government
also must meet those deadlines associated with any
objections it may have.  The Court will not consider any
dispute which has not been the subject of such written
communication.

Furthermore, the Court will consider and resolve only
issues relevant to disputed sentencing factors previously
stated in writing and additionally brought to its attention
at the time of sentencing.

1    At sentencing, you should advise the Court orally if

2  your lawyer has failed to raise any objections to the

3  presence report.  Contentions not stated by you or your

4  lawyer concerning the report are deemed abandoned.

5    Your failure to challenge the validity of any prior

6  conviction before imposition of your sentence will bar your

7  contesting those convictions at a later date.

8    In short, if you do not contest the facts set forth in

9  the presentence report, the Court may accept those facts as

10  accurate and may rely on them in determining your sentence.

11    You or your lawyer, on your behalf, may submit written

12  memoranda, motions, or other material, such as character

13  letters, before the sentencing hearing.  The government may

14  as well.  Either party must submit all such material to the

15  Court not later than seven days before the date set for your

16  sentencing hearing.

17    After you are sentenced, the government is limited, in

18  most instances, to one year within which to move for a

19  reduction in your sentence pursuant to Rule 35 of the

20  Federal Rules of Criminal Procedure by reason of substantial

21  assistance that you may have rendered.

22    The government is not required to return to court with

23  a Rule 35(b) motion to seek a reduction in your sentence.

24  And it is completely within the government's discretion

25  whether to do so.

1    If the government decides not to make a Rule 35 motion

2    on your behalf, you're entitled to relief from the Court

3    only in a very few exceptional circumstances.

4    At sentencing, you should advise the Court whether the

5    government has made any indication to you or your lawyer

6    that you might receive a Rule 35(b)motion.

7    If the government does make a Rule 35(b) motion, the

8    making of such motion will not extend, toll, or modify the

9    one-year statute of limitations that applies to your time

10   for filing a post-conviction Section 2255 motion to vacate,

11   set aside, or correct your sentence.

12   Moreover, the government cannot promise you that the

13   Court will grant a Rule 35(b) motion.  Nor can the

14   government promise you that law enforcement officers will

15   accept or act upon your offers of cooperation.

16   If you are convicted, whether by a jury or as a result

17   of a guilty plea, you can appeal such conviction if you

18   believe that your conviction was somehow unlawful or

19   involuntary or if there is some other fundamental defect in

20   the proceeding that was not waived by your guilty plea.

21   You also have a statutory right to appeal your sentence

22   under certain circumstances, particularly if you think your

23   sentence is contrary to law.

24   However, you may have agreed to waive certain appellate

25   and other rights in your plea agreement.  We will go over

any such waivers in your plea agreement when we take up your

individual case.  Such waivers are generally enforceable.

But if you believe the waiver in your plea agreement is

unenforceable or inapplicable for any reason, you can

present that theory to the appellate court.

With few exceptions, any notice of appeal must be filed

within 14 days of the judgment being entered on the docket

in your case.

If you're able to pay the cost of an appeal, you may

apply for leave to appeal in forma pauperis.

If you so request, the clerk of court will prepare and

file a notice of appeal on your behalf.

I'm now going to ask all defendants as a group certain

questions.  Please listen carefully because these questions

and your answers will constitute part of the record of your

plea.

If you wish to answer any questions yes, please raise

your hand and address the Court orally.

Counsel are admonished to take note of their client's

responses to my questions.

As to any defendant pleading guilty to a charge

contained in a criminal information, is there any such

defendant who has not discussed the matter of waiving his or

her right to indictment by a grand jury with his or her

lawyer?  (No hands are raised.)

1    Is there any defendant who does not understand his or

2    her right to indictment by a grand jury?  (No hands are

3    raised.)

4    Is there any defendant who has been induced to waive

5    indictment by reason of any threat or promise?  (No hands

6    are raised.)

7    Is there any lawyer present representing a defendant

8    who intends to plead to a criminal information who sees any

9    reason why his or her client should not waive indictment?

10   (No hands are raised.)

11   As to all defendants, is there any defendant who has

12   taken any medicine, pills, or drunk any alcoholic beverages

13   in the last 24 hours?  (No hands are raised.)

14   Is there any defendant who does not understand what is

15   happening here in court this morning?  (No hands are

16   raised.)

17   Is there any attorney representing a defendant who has

18   any doubt or questions about their client's competence to

19   enter a plea here today?  (No hands are raised.)

20   Is there any defendant who has not received a copy of

21   his or her indictment or information, the document that has

22   your charges?  (No hands are raised.)

23   Is there any defendant who has not discussed his or her

24   case with his or her lawyer?  (No hands are raised.)

25   Is there any defendant who is not completely and fully

satisfied with his or her lawyer's legal services in connection with their case?  (No hands are raised.)

Is there any defendant who needs or wishes to have the Court read their indictment or information to them for any reason?  (No hands are raised.)

I have just concluded explaining each defendant's right to a jury trial and the other rights under the Constitution and laws of the United States that each defendant has.

I'll now take up each individual on the calendar.

\* \* \* \* \*

THE COURT:  We'll now take up Mr. Lenzy's case. Good morning, Ms. Murray.

MS. MURRAY:  Good morning, Your Honor.

THE COURT:  Good morning, Mr. Perry.

MR. PERRY:  Good morning, Your Honor.

(Brief pause in the proceeding)

THE COURT:  Ms. Murray, are you and Mr. Lenzy ready to proceed?

MS. MURRAY:  Yes, Your Honor.

THE COURT:  And, Mr. Perry, is the government ready?

MR. PERRY:  Yes, Your Honor.

THE COURT:  At this time, I would ask that Mr. Lenzy be sworn or affirmed.

(THE DEFENDANT, RICHARD LENZY, IS SWORN.)

1       EXAMINATION

2  BY THE COURT:

3  Q.   Mr. Lenzy, do you understand that, having been sworn,

4  your answers to my questions are subject to the penalty of

5  perjury?

6       And if you were to lie to me, you could be prosecuted

7  for perjury or for making a false statement, sir?

8  A.   Yes, sir.

9  Q.   Please tell me your full name.

10 A.   Richard Lenzy.

11 Q.   How old are you, sir?

12 A.   Forty-one.

13 Q.   And how far did you go in school?

14 A.   12th -- I graduated.

15 Q.   Did you graduate?

16 A.   Yes.

17 Q.   You obviously can speak and understand English, right?

18 A.   Yes.

19 Q.   You can read and write, correct?

20 A.   Yes, sir.

21 Q.   Did you hear me and understand me this morning, sir,

22 when I described all the rights you have under the

23 Constitution and laws of the United States?

24 A.   Yes, sir.

25 Q.   And did you hear and understand all those other

1  questions that I asked the defendants as a group?

2  A.   Yes, sir.

3        THE COURT:  Ms. Murray, do you have any reason to

4  doubt Mr. Lenzy's competence to go forward today?

5        MS. MURRAY:  No, Your Honor.

6        THE COURT:  Does the government have any reason

7  to doubt Mr. Lenzy's competence to go forward today?

8        MR. PERRY:  No, sir.

9        THE COURT:  Based on Mr. Lenzy's answers to my

10  questions, my observations of Mr. Lenzy, and the answers

11  from counsel, I find that he is competent to go forward

12  here today.

13  BY THE COURT:

14  Q.   Mr. Lenzy, the charges in your case are contained in a

15  criminal information.

16       Count 1 charges that from a date unknown, but no later

17  than in or about October 2013, and continuing until on or

18  about July 8, 2015, in the Eastern District of North

19  Carolina, you did knowingly and intentionally combine,

20  conspire, confederate, agree, and have a tacit

21  understanding with other persons known and unknown to the

22  grand jury to distribute and possess with the intent to

23  distribute cocaine and cocaine base crack, a Schedule II

24  Controlled Substance, in violation of Title 21, U.S. Code,

25  Section 841(a)(1).

1    With respect to you, the amount involved in the

2  conspiracy attributable to you as a result of your own

3  conduct and the conduct of other conspirators reasonably

4  foreseeable to you is 500 grams of cocaine and a quantity of

5  cocaine base crack in violation of Title 21, U.S. Code,

6  Section 841(b)(1)(B), all in violation of Title 21, U.S.

7  Code, Section 846.

8    Count 2 charges that on or about July 8, 2015, in the

9  Eastern District of North Carolina, you, having been

10  convicted of a crime punishable by imprisonment for a term

11  exceeding one year, did knowingly possess in or affecting

12  commerce a firearm in violation of Title 18, U.S. Code,

13  Sections 922(g)(1) and 924.

14    Do you understand those two charges, sir?

15  A.   Yes, sir.

16  Q.   The Court advises you of the following potential

17  penalties if you're convicted of those charges.

18    If you're convicted of Count 1, the potential penalties

19  are at least 5 years imprisonment, no more than 40 years

20  imprisonment, up to a 5 million-dollar fine, at least 4

21  years of supervised release, and up to a lifetime of

22  supervised release, 100 dollars special assessment.

23    You can be ordered to pay restitution.

24    There is a forfeiture notice in the criminal

25  information giving you notice that the government is going

1    to seek to have forfeited the property identified in the

2    forfeiture notice.  And if you can't find that property,

3    then appropriate substitute assets.

4         Count 2 charges you with being a felon in possession of

5    a firearm.

6         If you're convicted of that offense, the potential

7    penalties are not more than 10 years imprisonment, up to a

8    250,000 dollar fine, or both such fine and imprisonment, not

9    more than 3 years of supervised release, 100 dollar special

10   assessment.

11        You can be ordered to pay restitution.

12        There is a forfeiture notice in connection with Count 2

13   as well.

14        If, however, with respect to Count 2 you're determined

15   to be Armed Career Offender at the time of sentencing, the

16   potential penalties increase to a minimum of 15 years

17   imprisonment and no more than life imprisonment, up to a

18   250,000 dollar fine, not more than 5 years supervised

19   release, 100 dollar special assessment.

20        You can be ordered to pay restitution.

21        And there is forfeiture notice that applies to Count 2.

22        Do you understand all the potential penalties

23   associated with Counts 1 and 2, sir?

24   A.   Yes, sir.

25   Q.   And it's my understanding that you've reached a plea

1    agreement in this case, correct, sir?

2        You've reached a plea agreement in this case, sir?

3    A.   Yes.

4    Q.   All right.  The Court advises you, again, you

5    understand that you have an absolute right to plead not

6    guilty to these charges if you want to, sir.

7        Do you understand that?

8    A.   Yes, sir.

9    Q.   And if you did plead not guilty, you'd enjoy all those

10   trial rights we talked about.

11       Do you understand that?

12   A.   Yes, sir.

13   Q.   But if you plead guilty, you'll be waiving or giving

14   up all those trial rights.

15       Do you understand that, sir?

16   A.   Yes, sir.

17   Q.   Do you understand all the other consequences of

18   pleading guilty that we talked about here today, sir?

19   A.   Yes, sir.

20   Q.   With respect to the sentencing process, have you

21   talked with your lawyer about the sentencing process, sir?

22   A.   Yes, sir.

23   Q.   Again, the Court advises you that at the sentencing

24   hearing, the Court will rule on any objections that there

25   might be to the presentence report.

1    I'll calculate an advisory guideline range.  I'll

2    consider any motion that might be made that might move that

3    range either up or down.

4    I'll consider all arguments your lawyer makes, any

5    statement you would like to make, sir, and all arguments of

6    the assistant United States Attorney.

7    I'll then determine your sentence in court and

8    announce it on the day of the sentencing hearing.

9    Do you understand that, sir?

10   A.   Yes, sir.

11   Q.   The Court advises you that even if your lawyer or

12   anyone else has given you her best estimate of what she

13   thinks the advisory guideline range will be, whether she

14   thinks there will be a departure or a variance motion,

15   whether she thinks the Court will grant or deny such a

16   departure or variance motion, or any prediction from your

17   lawyer or anyone else as to your actual sentence or any

18   sentencing topic -- any prediction from anyone on any

19   sentencing topic is not binding on the Court.

20   Do you understand that, sir?

21   A.   Yes, sir.

22   Q.   And if it turned out that any such prediction was

23   incorrect, that would not permit you to then withdraw your

24   guilty plea.

25   Do you understand that, sir?

1    A.   Yes, sir.

2    Q.   Has anyone threatened you or anyone else or forced you

3    in any way to plead guilty, sir?

4    A.   No, sir.

5    Q.   Has anyone made any promise to you or anyone else

6    that's made you decide to plead guilty, sir?

7    A.   No, sir.

8    Q.   All right.  I need you to look at the very last page

9    of your plea agreement, I think it's Page 8, and just

10   confirm for me, Mr. Lenzy, that you, in fact, signed that

11   agreement, sir.

12       Did you sign it?

13   A.   Yes, sir.

14   Q.   Did you read and discuss this entire plea agreement

15   with your lawyer before you signed it, sir?

16   A.   Yes, sir.

17   Q.   Does this written plea agreement constitute the entire

18   agreement that you have with the government about resolving

19   your case, sir?

20   A.   Yes, sir.

21   Q.   Do you understand each term in this plea agreement,

22   sir?

23   A.   Yes, sir.

24   Q.   I need to go over one term in particular.  It has to

25   do with the waiver of certain appellate and other rights.

1    It's in Paragraph 2(c).  I'm going to read it to you.

2        In that paragraph, you agree to the following:

3        "To waive knowingly and expressly all rights conferred

4    by 18 U.S.C. Section 3742, to appeal the conviction and

5    whatever sentence is imposed on any ground, including any

6    issues that relate to the establishment of the advisory

7    guideline range, reserving only the right to appeal from a

8    sentence in excess of the applicable advisory guideline

9    range that is established at sentencing.  And, further, to

10   waive all rights to contest the conviction or sentence in

11   any post-conviction proceeding, including one pursuant to

12   28 U.S.C. Section 2255, excepting an appeal or motion based

13   upon grounds of ineffective assistance of counsel or

14   prosecutorial misconduct not known to the defendant at the

15   time of the defendant's guilty plea.  The foregoing appeal

16   waiver does not constitute or trigger a waiver by the

17   United States of any of its rights to appeal provided by

18   law."

19       Do you understand the appellate and other rights you're

20   giving up in that paragraph, sir?

21   A.   Yes, sir.

22   Q.   And you understand that if you plead guilty to these

23   charges, the Court would have authority to impose the

24   maximum penalty authorized by law.  And if the Court did

25   impose such a maximum penalty sentence, you would not then

1    be allowed to withdraw your guilty plea.

2         Do you understand that?

3    A.   Yes, sir.

4    Q.   And, again, just confirm for me that no one has

5    threatened you or anyone else that's made you decide to

6    plead guilty to this, correct?

7    A.   Yes, sir.

8    Q.   And no one has made any promise to you or anyone else

9    that's made you decide to plead guilty, correct, sir?

10   A.   Yes, sir.

11   Q.   All right.  Do you understand these two charges are

12   felony offenses, sir?

13   A.   Yes, sir.

14   Q.   Do you understand the maximum penalties authorized by

15   law for these felony offenses, sir?

16   A.   Yes, sir.

17   Q.   Do you understand that by pleading guilty to these

18   felony offenses, you may be derived of certain valuable

19   civil rights, such as the right to vote?

20   A.   Yes, sir.

21   Q.   And do you understand you have the right to have a

22   grand jury consider these charges and to decide whether to

23   indict you or not, sir?

24   A.   Yes, sir.

25   Q.   And you've signed here in court and your lawyer has

1    handed up this Waiver of Indictment Form.

2          Is that correct, sir?

3    A.    Yes, sir.

4    Q.    Do you understand that right now, at this very moment,

5    you still have an absolute right to plead not guilty if you

6    want to?

7    A.    Yes, sir.

8    Q.    And if you did plead not guilty, you'd enjoy all those

9    trial rights we talked about.

10          Do you understand that?

11   A.    Yes, sir.

12   Q.    But if you plead guilty, there won't be a trial, sir.

13          Do you understand that?

14   A.    Yes, sir.

15   Q.    You will have waived or given up all those trial

16   rights.

17          Do you understand that, sir?

18   A.    Yes, sir.

19   Q.    Have you answered all of my questions truthfully here

20   today, Mr. Lenzy?

21   A.    Yes, sir.

22   Q.    All right.  I've already read the charges to you in

23   full.  So I'm going to summarize the charges.

24          The charge in Count 1 is conspiracy to distribute and

25   possess with the intent to distribute 500 grams or more of

cocaine and a quantity of cocaine base crack as set forth
in full in Count 1.

In that from a date unknown, but no later than in or
about October 2013, and continuing until on or about July
8, 2015, in the Eastern District of North Carolina, the
defendant entered into an agreement with others known and
unknown to distribute and possess with the intent to
distribute 500 grams or more of cocaine and a quantity of
cocaine base crack, that you knew the unlawful purpose of
the agreement, and that you joined in the agreement
willfully, that is, with the intent to further its unlawful
purpose, all as set forth in full in Count 1.

How do you now plead to that charge, sir, guilty or not
guilty?

A.   Guilty.

Q.   Did you commit the crime charged in Count 1, sir?

A.   Yes, sir.

Q.   So you are, in fact, guilty of Count 1, sir?

A.   Yes, sir.

Q.   Thank you, Mr. Lenzy.

The charge in Count 2 is possession of a firearm by a
felon, in that on or about July 8, 2015, in the Eastern
District of North Carolina, the defendant possessed in or
affecting commerce a firearm, and that he previously had
been convicted of a crime punishable by imprisonment for a

1    term exceeding one year, as set forth in full in Count 2.

2           How do you now plead to the charge in Count 2, sir,

3    guilty or not guilty?

4    A.   Guilty.

5    Q.   Did you commit the crime charged in Count 2, sir?

6           Did you commit that crime, sir?

7    A.   Yes, sir.

8    Q.   So you are, in fact, guilty of Count 2, sir?

9    A.   Yes, sir.

10          THE COURT:  Thank you, sir.  You and your counsel

11   may have a seat.

12          At this time, I would ask Mr. Perry to make a

13   proffer as to what the evidence would show if this matter

14   were to go to trial so the Court may determine whether

15   there's an independent factual basis for the plea.

16          Mr. Perry.

17          MR. PERRY:  Yes, Your Honor.

18          At trial, some of the government's evidence would be

19   that on November 5, 2013, a Greenville Drug Task Force used

20   an informant to purchase approximately 22 grams of cocaine

21   base crack from Crystal Moore and Fantasha Page.  That sale

22   happened in Greenville, North Carolina, Judge.  And that

23   was for 1400 dollars.

24          Prior to the actual sale, agents conducted surveillance

25   of the two women and saw her meet at a Sheetz convenience

store, saw them meet with the defendant.

After that meeting, other agents followed Richard Lenzy back to his residence, saw him go into a residence at 4270 Williamsbrook Lane, Apartment B, in Greenville, North Carolina.

Agents then saw him leave that residence again, go to another Sheetz convenience store, and detained and arrested him at that time.

After he left, agents went back to that residence and got consent to search the residence from the defendant's girlfriend, Kimberly Taylor.

They searched the residence and found a loaded Ruger .45 caliber handgun in the nightstand in the bedroom, approximately 67 grams of cocaine under the sink in the bathroom.  They also found baking soda and inositol powder in the kitchen.

Ms. Taylor said that she didn't know Lenzy was selling cocaine.

At that time, Ms. Taylor said that the gun found in the bedroom belonged to her.

However, in a later interview, she said that Richard Lenzy, her boyfriend, brought the gun to the residence.

As I said, the defendant was arrested after they saw him go to another Sheetz store.

After his arrest, he waived his Miranda rights and

gave, and said that he met a cocaine supplier named Larry while he was in prison in 2009. He said that he bought 4 1/2 ounces of cocaine from Larry three times. He said that he bought from Larry every three weeks. He said that on that day, that he met Larry in Charlotte and bought 5 ounces of cocaine for 5000 dollars and stored it under the sink.

He said he cooked one ounce of crack cocaine in his house and met Crystal, referring to Crystal Moore, at the Sheetz and gave her approximately 27 grams of cocaine base crack.

He said that Crystal owed him 1300 dollars for the crack. He also said that Crystal told him that she was selling crack to a black male from New York, who the -- that's who the informant represented himself to be.

He also said that he was selling crack to a person named Eric, a skinny, white male about 6 feet tall and around 31 years old.

During the interview, Lenzy also said that he owned a .45 caliber handgun that he kept in his nightstand in the bedroom.

Lenzy was charged in state court but later posted bond for these charges.

On June 23, 2015, the Greenville Drug Task Force used an uncover agent to buy 3.4 grams of cocaine from the defendant at the Carolina Ale House Restaurant in

1    Greenville, North Carolina, for 200 dollars.

2        Then, on July 8, 2015, the Greenville Drug Task Force

3    used the undercover agent again to make a controlled

4    purchase of 13.9 grams of cocaine from the defendant for 600

5    dollars at the parking lot of the Wingate Inn, in

6    Greenville, North Carolina.

7        After that, the Pitt County Sheriff's Office obtained a

8    search warrant for a hotel room used by Richard Lenzy in

9    Greenville.  And when they executed the search warrant, they

10   found approximately 158 grams of marijuana, 25 desoxyn

11   pills, which is methamphetamine, 7972.31, a loaded Taurus

12   .9 mm pistol, a bag of .9 mm ammo, scales, and drug

13   paraphernalia.

14       ATF Agent John Griffin examined the Taurus firearm and

15   determined that it had traveled in interstate commerce,

16   having been manufactured outside the State of North

17   Carolina.

18       The defendant, previous to that date, had been

19   convicted of a felony in North Carolina.  He was convicted

20   in 1998 of second degree murder and had a 168 to 211 month

21   sentence.

22            THE COURT:  Thank you, Mr. Perry.

23            MR. PERRY:  Thank you, Judge.

24            THE COURT:  Based on the government's summary and

25   your acknowledgement that you are, in fact, guilty as

charged in Counts 1 and 2, and because you know your right

to a trial and what the maximum possible punishment is, and

because you're voluntarily pleading guilty, the Court will

accept your plea of guilty to the two charges contained in

the criminal information.

The Court finds that the plea was freely and

voluntarily entered.

At the time the defendant entered the plea, he was

fully competent and had a full and complete understanding of

the nature of the charges against him.

The plea is accepted.  And he is adjudged guilty of the

charges contained in the criminal information.

Pursuant to the plea agreement, the Court anticipates

dismissing the charges contained in the indictment at the

time of sentencing.

The matter is set for sentencing at the November 13,

2017 Term of Court.

After court today, Ms. Murray will contact the

Probation Office, which is present here in the courthouse,

to arrange a time for your interview.

That interview is with the Probation Office.  And Ms.

Murray can be with you during that interview.

The purpose of that interview is to help prepare the

presentence report.

Once the report is prepared, you and Ms. Murray will

1    get copy of it, and so will the prosecutor.

2        If either side thinks something in the report is

3    incorrect, you need to timely object to it.

4        At sentencing, I'll rule on any objections that still

5    remain to the report.  I'll calculate an advisory guideline

6    range.  And we'll proceed with sentencing as I've already

7    described.

8        Today, you'll be remanded to the custody of the United

9    States Marshal.

10        You will continue to have access to consult with your

11    lawyer as you prepare for sentencing in connection with your

12    case.

13        Ms. Murray, is there anything else we need to take up

14    in Mr. Lenzy's case today?

15            MS. MURRAY:  Not at this time, Your Honor.

16            THE COURT:  Anything else from the government?

17            MR. PERRY:  No, Your Honor.

18            THE COURT:  I thank counsel for their work here

19    today.

20        That will conclude the matter involving Mr. Lenzy for

21    this morning.

22        (Proceedings concluded in the case at 9:45 a.m.)

23

24

25

```
 1
 2                        CERTIFICATE
 3
 4          This is to certify that the foregoing transcript
 5   of proceedings, taken at the judicial session of the United
 6   States District Court, is a true and accurate transcription
 7   of the proceedings taken by me in machine shorthand and
 8   transcribed to the best of my ability by computer under my
 9   supervision.
10          This, the 24th day of March, 2019.
11
12                        /S/  MICHELLE MAAR
13                        Michelle Maar, RDR, RMR, FCRR
                          Official Court Reporter (Inactive)
14
15
16
17
18
19
20
21
22
23
24
25
```